In this case, the Grand Jury indicted Mr. Alcala for the offense of being illegally found in the United States. At the close of his trial, however, the district court judge instructed the jury, both orally and in writing, to consider only whether Mr. Alcala was guilty of a different offense, either legally re-entering the United States. And that was an offense for which Mr. Alcala was never indicted. The court's actions constructively amended the indictment. Contrary to the government's suggestions, it wasn't simply a variance regarding the indictment and the proof. It wasn't simply a mis-description of elements. Rather, the court instructed the jury on a separate crime. Let me ask you a sort of a bottom-line question. Clearly, the jury – the court instructed incorrectly. And clearly, everybody was asleep. That means that we review for plain error. And the bottom-line question, then, is, were substantial rights really affected such that the error should be noticed? Okay. There is an argument that they don't need – the error doesn't need to be noticed because the crime, in effect, is – well, the crime is illegal re-entry. And that consists of three offenses. I mean, you can be convicted of illegal re-entry if you have attempted to re-enter, if you have illegally re-entered, or if you're found in the United States after having illegally re-entered. So we've said there are three different offenses, but it's the same crime. And you tell me why, in your judgment, we should notice the error, assuming that it was error. Well, in response to Your Honor's question, one obvious distinction is that the crime of re-entry would be venued differently than the crime of being found in. It's not a crime for which Mr. Alcala, under most circumstances, could have been indicted in this district. And under the Hernandez decision – Does that matter? I mean, is that a matter of substantial rights? I think it does, Your Honor. Under the Hernandez decision, this Court has confirmed that questions of venue are not simply matters of formal public – legal formality, but actually affect public policy, because it is a fundamental constitutional right to be tried in the district in which the offense is committed. So that's one issue. Additional issues, however, are that the offense of re-entry, the separate offense, has different defenses. It has an issue about the voluntariness of the entry. There are issues about the mental state of the defendant. There are issues about the statute of limitations, which I think, in this case, are not implicated. But there are a whole host of – you know, it's illegal re-entry. It's a relatively simple charge. However, the elements are different, and the defenses are different to illegally re-entering. And because the defendant wasn't indicted, and because that wasn't the issue at trial, the defendant had no reason to put on any evidence to contest the legality of the re-entry. And we certainly have no evidence on this record that any re-entry was even actionable in this district. So that's, I think, the short answer, or the first answer. But the second answer to the Court's question, because obviously that's the heart of this case, is that in the post-Olano decisions by this circuit, and most recently in Schipsi and Dipentino, the Court has consistently said Olano leaves open the question of whether constructive amendment is still a structural error that requires – or, not structural, but an error that requires reversal because it's per se error. And I think previously, under the Supreme Court's decision in Styrone, all of the circuits had found that a constructive amendment was a per se error. And the Ninth Circuit, in Stewart Clinical Laboratories and other cases – Kagan. Assuming it's not a per se error, nevertheless, should it be recognized? Yes. I read Johnson as pretty much saying it's not structural error, but I don't know whether that matters very much. Well, this is the reason. What happened in Dipentino, which was a Clean Water Act case in which the defendants were – was indicted on a certain offense of a violation of a certain regulation of asbestos removal, and then the trial went in. And at the close of trial, the Court amended the – constructively amended the indictment that the Ninth Circuit held by adding a second work regulation or practice regulation. And the jury could find that the defendant was guilty if he'd violated either of two regulations. Now, both of them, as this Court noted in this case, amounted to the same Clean Water Act violation. They were simply different ways to violate the same statute. In Dipentino, the Court found that it wouldn't need to reach the whole structural error issue because there was prejudice by definition, and the reason was it was possible that the defendant was convicted under a theory of the offense for which he was not indicted. And interestingly, in Dipentino, the second issue before the Court was sufficiency of the evidence, and it said we're not going to rule for the defendant on that. We do find there was sufficient evidence to convict him for the indicted offense. However, because we cannot know whether the jury convicted on the indicted or the unindicted, that requires reversal, and necessarily the fourth prong is satisfied. It would affect the fairness of the proceedings to allow someone to be convicted for an offense for which they were not indicted. And I think Dipentino controls this case. I would, of course, be happy to reach the issue and establish its structural error, but knowing the Court's prudence in these matters, I think that Dipentino controls, and the Court need not reach the issue of structural error, but can find, following Schiff's and Dipentino, but particularly Dipentino, that there was prejudice simply by the fact, in this case, it's a little starker, the jury only had the wrong instruction in front of them. They didn't even have the right instruction there. So the idea that he was convicted for the wrong offense, I think, is established by the record. Also, the government's cases tend to focus on situations of variance or misdescription of element where the, quote, evidence was overwhelming. But I would point out to the Court that that is not a standard that's been applied in a constructive amendment case. It's we don't look to see, and again, Dipentino's instructive here about the evidence being overwhelming. Of course, we have an argument that the evidence wasn't overwhelming. We have a Rule 29 motion here as well because of the issue about the dates. And with regard to the dates, it's sort of for the Court to address whether a variance, in this case, of four months, is closer to the 18-day variance that was, has been found to be non-harmful and hidden in other cases, or the seven months that the Court's found is below. Kagan, I think it might, it runs the risk of a double jeopardy-type prosecution here, because he only, he was deported sometime before 1999 and only reentered in 1999, so what's the double jeopardy risk from a variance between November 20th and March 12th? You know, I was thinking about it, and to be honest, I don't think there's a strong double jeopardy argument. I think the issue more is ability to prepare a defense, and there may be a scenario. But what defense does he have to an interview that occurred on March 20th? I mean, to an interview. I mean, it happened. It's not like you have a drug transaction where maybe it happened, maybe it didn't happen, or the firearm situation where the guy's accused of having a firearm and he's in prison and there's no possibility of having it on or about the date of the lay. What's the, what's the? Well, perhaps the best argument I would respond with is that illegal reentry is, it's a relatively simple offense for the government to prove in the ordinary case, as I'm sure the Court's aware, and as I frequently advise my clients. It's also an offense that carries very steep penalties. Under those circumstances, we think the least the government can do is prove the right time frame, not the particular day, the right time frame, and put in confident evidence to establish the defendant's guilt. That didn't happen in this case. And if possible, I'd like to reserve my last minute for rebuttal. Thank you. Ms. Rosen. Thank you. May it please the Court. I'm Amber Rosen, representing the United States of America in this case. I want to address the Court's question regarding, even assuming it was a constructive amendment and assuming it was error, was he prejudiced? And the answer is no, for a number of reasons. Not only the reason that the Court itself raised, which is that these are but three different means of committing the same offense, but also for several other reasons. The first of which is the trial focused on the correct offense. And that is a big distinction from the cases that the defense relies on, such as Shipsey and D'Antino, where the Court reversed for a constructive amendment. And what I mean by that is the indictment was read to the jury, and that's said, found in. The evidence at trial focused on when he was found and focused on the interview on March 12th. The government only argued the found in theory and never argued that the defendant should be convicted simply because he reentered. You know what? I agree with you. It's just silly as all get out, because he had an interview in this country, so he was here. Right. That is, he was found here. And that had to have followed a reentry. But the problem is that the jury was instructed that all they had to do was find that he reentered. And nobody questioned that, because it wasn't an issue. I mean, so therefore, they could they stopped short, in effect. Now, I'm recognizing that it's a silly stop, but never mind. They stopped short under the instructions they could convict without going ahead and taking the next step and saying, ah, yes, but he was found here. Well, I have two responses to that. And one is I'm going to talk about what the court did and how it, I think, corrected that erroneous instruction. But I think that gets to the next point. I also want to get back to, you know, why doesn't it matter? And I think the fact is that because of the focus of the trial on the found in and in the argument by the government that he needed to be found, and the government went through the elements of the offense with the jury and discussed that as found and said several times, you need to find that he was found here, that there really was no confusion on the jury's part of what it needed to do. And the reason that is so different from the other constructive amendment cases where the court did reverse is because in each of those cases, Shipsey, Dipentino, the government put on evidence of the alternate theory or the impermissible theory. The court instructed that they could find him guilty of the impermissible theory. And the government in those cases argued the impermissible theory. Sometimes only evidence of the impermissible theory was what was there. So there was a big question that the jury would have believed that they could have convicted him of the impermissible theory. And I think because the focus on this trial was all on found in, that that confusion is not present in this case. In fact, we know that because when the defendant, when the defense counsel argued that it could be, that they should look at whether the date in the indictment matched up to the reentry or the found in date, the government got up and objected and clarified that and said, no, he's not charged with reentry. It doesn't matter when he's reentered. It only matters when he was found. And the court then said, you need to find, said to the jury, you need to find the defendant was found on or about November 20, 2000. So I agree that maybe to say it corrected its instructions a little strong in the sense that I don't think the court said that cognizant that the earlier instruction only said reentered. But it did clarify to the jury what they needed to do. And it did tell them specifically that they needed to look at the found in. So that's one reason why I think that there's no prejudice. Also, let me just add, before I move on to the next point, it's also the defense sites in the reply brief, the Mundy case, for a different proposition. But that case says when looking at instructional error, the court must look at the entire trial in context and not just at the instructions. The second reason I think there's no prejudice is it's something else the court hit on, which is reentry is embedded in the offense of found in. Yeah, it is, but it's stopped short of it. But as you say, there's no issue that the defendant was found in this case. He's sitting before, he was interviewed, he was sitting before the jurors. And the fact is the overwhelming, whether the evidence is overwhelming, is considered and is the test, even in constructive amendment cases. If you look at the Troy case, again cited by defendant in the reply brief, although that case found that reversal was appropriate because they thought the evidence was not overwhelming, the court in that case did look to that issue and said, under plain error, the question is whether the constructive amendment prejudice defendant, the court noted that there's no prejudice where the proof is overwhelming. Now, it didn't find the evidence overwhelming in that case, but that suggests that that is the right standard here. And because the proof of him being found was overwhelming, I don't think we should be concerned that the defendant was prejudiced. The reality is in non-border cases, there really is no distinction between reentry and being found. You have to find the defendant reentered in order to find them found. Well, there's a difference. It may not be a pertinent difference if you're actually found here, but you've got all the official restraint stuff and whatever, which isn't really an issue in this case because he was here, presumably, for a year. Right. So in both of his reentry and his found, the evidence was overwhelming. The issues of the defense that would go to reentry because he wasn't found at the border was not really an issue. Under Godinez-Rabatin, the court said there that the elements were found in. Instead of saying that the third element was found in, it says, voluntarily entered and remained. I mean, there's no question that he remained since he was found so much.  No, I did not try the case. Everybody was sound asleep. Yes. Now, you know, it's too bad, but if people are sound asleep and there's real error, then why shouldn't we just say people were sound asleep and there you are? Well, because I think it's not real error. I mean, for one thing, I think the court, in making that specific instruction to the juror, but it wasn't. See, that's the problem. It was in colloquy to counsel, and it was almost as if it was an aside. And instead of doing what should have happened, which is one or the other, but particularly the U.S. attorney, who should be trying to protect the record, as it were, should have said, Your Honor, would you please instruct the jury that the jury has to find found in, rather than just simply having reentered without permission. Well, Your Honor, I would disagree with your characterization of the exchange. And that is the defense attorney said, if any of you have a reasonable doubt about whether the defendant reentered or was found in the United States on November 20, 2000, then you must return. And then the court jumps in and kind of corrects the on to what needs to be on or about. And then the government counsel says, and further, if I may state my objection more clearly, the indictment charges then found in the United States, it doesn't matter when he reentered the United States. Ms. Foxson says, well, the court's instruction, Ms. Bissett, I think that's become confusing, Ms. Fox. The court's instruction says the defendant reentered the United States or was found in, obviously that was a misstatement of what the court actually said. All right, so I'll say found in. And then the court says, he must be found in the United States on or about November 20, with a definition of on or about being that contained in the instruction. So I think, you know, the defense counsel referred to the instructions. The court then addresses the jury when all of this is being said, you know, obviously not at sidebar, but in front of them. So I think it was very clear that the government was saying, no, only found in needs to be at issue. And the court then turned to the jury and told them that was the case. So, you know, I think that helps reduce any chance of confusion on the jurors' part. Kagan. The confusion. You know, it's fairly simple. It's not difficult to say that on or about when you're talking about, you know, a drug deal or whatever is slightly ambiguous and that the government shouldn't be held to, you know, a precise minute on a precise date in making its showing that the deal did, in fact, go down, fairly close to when we said it did. Here, there can't be any issue at all about when the interview occurred. And, I mean, maybe one occurred on November 20th. Apparently, one did. But you didn't put on evidence of. And so instead, you put on evidence that happened months later. Right. So, so, I mean, that's another instance of kind of confusion and somebody being asleep at the switch. Well, I think there's an argument that it was maybe a little sloppy or lazy by the government not to call the arresting officer. And I don't know what the circumstances were that may have caused that. But I think the question is, again, you know, does that require reversal? Is that a variance that matters? And the answer is no for several reasons. One, generally, a date is not caused, a variance in date does not lead to reversible error unless the date is a material element, which this Court has explicitly held it's not in these kinds of cases. Did it impede the defense? No. There was no defense regarding the date, as there could not have been. He was in custody that entire time. They were on notice that that's what the government was not going to put on evidence regarding the November 12th date, because in the witness list and the pretrial papers, there was no indication that the arresting officer was going to be called as a witness. So they did have some notice that the only evidence the government was going to put on was the March date. I also think that this case, the Court could look for precedent to Godinez-Rabatin. In that case, the government charged an eight-month period on or between during eight months and didn't specify a date. And the defendant said, you know, that's not specific enough. They should have specified a date within that time period. And the Court said they didn't need to. And so I think that gives some guidance in this case. And the facts are somewhat similar in that in that case he was in custody that whole time, and in this case he was, too. Well, now, there is this confusing suggestion that the jury could have, by chance, found this guy guilty of illegal reentry, or it could have found him guilty of having been found here, right? That's the claim, yes. And there is a chance that they could have found that he was guilty of being found here on the day he was arrested, right? Well, there was no evidence about him being found on that date, so. Well, he was arrested. There was no evidence that put it on a trial, though, that he was arrested on that date. Okay. How did that get in the record? It's in the pre-sentence report. It's in the pre-sentence report. Only in the pre-sentence report. It was not put down at trial. The jury was not aware of that. Then he was interviewed in the jail by a government agent. Correct. At a time certain. Right. And then the jury was free to find that he was guilty of some crime that he had committed on or about November 20th, which was well in advance of when he was interviewed. Correct. And that date, November 20th, is more nearly the date that he re-entered illegally, if that's the case. Well, no. I don't believe so. All right. He admitted that he re-entered in 1999, so he's at least 11 months away from the re-entry date. I guess. I guess what I'm getting at now, all this is preliminary to. If ever there was a statute written to make this prosecution simple, it's this one. There was a time when being found was not a crime, and it's only in the, I don't know, recent, what, 15 years or less that it's been changed. And in my experience, this is the second occasion when we have been quibbling over what is the date. Because somebody isn't paying attention. Either somebody who's drafting the indictment or somebody who's responsible for presenting the evidence isn't. And I think that in these cases, we're going to get about what the court permits. And if we say, this is okay, we're going to get it. Because we get it when we say in other forms of law enforcement, if this is okay, that's what we get. Now, if somebody isn't going to take charge and say, let's do it right, let's pay attention, let's at least have one person in the courtroom who is attentive and cares, when are we going to quit saying, this is okay, this is okay, this is okay, this is okay. Now, who's going to take charge? We'll get, I'm a long-time believer in the fact that we will get in law enforcement what we permit. That's just, we'll get it. We'll get it. I certainly understand the court's concern. And it's almost to the point where the court ought to say that in these cases, for purely, purely reasons of sending a message that somebody's got to pay attention, we should reverse this kind of case. Well, if I may respond to that, I certainly understand the court's concerns. And I'm not going to say that those concerns aren't implicated in this case. I would say, vis-à-vis the date, the defense strenuously argued that that was not reasonably near. So that was the issue, and argued that that was basically the major defense in the case. So the jury clearly considered that and believed that it was reasonably near. I don't think four months is such a long time that that is, we should say, as a matter of law, they can't determine that that's reasonably near. As to the instructional error, you know, I think it's a little bit difficult in these non-border cases, because as even this court has pointed out, I think it was in Pacheco, Medina, you know, it's, that court talked about, it's difficult to speak, in talking about reentry and founding, it's difficult to speak of one concept without entangling the other. And I think Mr. Alcala's defense attorney is the best example of that. She kept confusing the two and conflating the two and equating the two in her closing argument. I mean, in some sense, she was helping to invite that error. And I think because in the non-border cases, when the defendant's sitting in front of us, it's, you know, there's really little practical or pragmatic difference because the reentry is embedded in it and because of just the nature of the crime, that it makes that confusion, you know, even for his own counsel, the confusion can be there. And so I think that mitigates against the prejudice in this case and against the sense of, you know, what could be potential, you know, feeling of just the sloppiness of the case so that somehow the government and the court is itself to blame for maybe a reversal, is that, you know, the confusion is somewhat understandable in the non-border cases where the distinction is minimal and where the defense counsel is, where the defendant is himself conflating the two, you know, that maybe it's not as such an egregious example that this needs to be the case where that message is sent. I appreciate your... Just go back for a second now, just so I'm sure. Now, the evidence was, of course, that he was found in jail. No, I don't believe that the agent testified that that is where the interview took place. I think that was cut from the jury. There was no evidence that he was in jail on the occasion when he was interviewed? I don't believe so. I think they purposefully kept that information from the jurors. Okay. Thank you. Thank you, Ms. Rosen. Ms. Fox. Thank you, Your Honors. Just briefly, with regard to the date, as I think Judge Levy is suggesting, part of the reason that it was really troubling in this case to have the wrong jury instruction, which I think, as I've said before, is a significant error, is that we had argued the date. We'd argued he's not found in in November. The only evidence of found in is in March. Then the jury got an instruction that said, well, when did he re-enter? Now, he could well have re-entered in November and been found in in March. And then the date of the indictment isn't such a problem, although it's four months difference, because maybe it's the date for the offense they think they're supposed to find. The second thing that I think compounds the situation here is the verdict form. Reviewing for today, I reviewed it, and as is the practice in our district, the government's verdict form recites the statutory name of the offense and required the jury to find, when it was read into the record at 183 of the excerpt of record, find the defendant guilty of illegal re-entry into the United States following deportation. So I don't think that the error was ever, that the confusion was resolved here. I think the jury instructions were incorrect, and I think that the case should be reversed for that reason. All right. Thank you, Your Honor. Kagan. So we thank you for your argument in this matter, and it will be submitted in recess for discussion.
judges: Leavy, Rymer, Paez